NONPRECEDENTIAL DISPOSITION

To be cited only in accordance with Fed. R. App. P. 32.1

# United States Court of Appeals

## For the Seventh Circuit
### Chicago, Illinois 60604

Argued January 11, 2017
Decided January 17, 2017

### Before

WILLIAM J. BAUER, *Circuit Judge*

JOEL M. FLAUM, *Circuit Judge*

FRANK H. EASTERBROOK, *Circuit Judge*

| | |
|---|---|
| No. 16-3215 <br><br> PRIMEX PLASTICS CORPORATION, <br>   *Plaintiff-Appellant,* <br><br> *v.* <br><br> CURTIS ZAMEC, *et al.,* <br>   *Defendants-Appellees.* | Appeal from the United States District Court for the Western District of Wisconsin. <br><br> No. 15-cv-175-bbc <br> Barbara B. Crabb, *Judge.* |

### Order

When TriEnda, LLC, closed its doors in February 2011, it owed approximately $2.7 million to Primex Plastics, its principal supplier. In this suit under the diversity jurisdiction, Primex seeks to recover that sum from Curtis Zamec and his family trusts, which in late December 2009 received approximately $7 million from TriEnda to buy out part of Zamec's ownership interest. Primex maintains that the buyout was a fraudulent conveyance under Wis. Stat. §242.04. (The parties agree that Wisconsin law controls.)

After holding a bench trial, the district court entered judgment for Zamec and his trusts (collectively the defendants). 2016 U.S. Dist. LEXIS 97144 (W.D. Wis. July 26, 2016). The judge reached three principal conclusions:

First, TriEnda did not repurchase defendants' interests intending to harm any creditor. This defeated Primex's claim under §242.04(1)(a), which makes a recipient liable if the debtor made the transfer "[w]ith actual intent to hinder, delay or defraud any creditor of the debtor".

Second, TriEnda received reasonable value for the buyout and did not believe that the transaction would make it unable to pay debts as they came due. These two findings defeated Primex's claim under §242.04(1)(b), which makes a recipient liable if the debtor made the transfer "[w]ithout receiving a reasonably equivalent value in exchange for the transfer or obligation, and the debtor … 2. … reasonably should have believed that [it] would incur debts beyond [its] ability to pay as they became due."

Third, TriEnda would have failed at just about the same time whether or not it bought out the membership interests, leaving Primex owed just about the same amount of money, so that it could not show that its loss was caused by the buyout.

On appeal, Primex has abandoned its claim under §242.04(1)(a). It now concentrates on the district court's other conclusions. And with respect to one of these it has a good point. The district court found that the buyout furnished "reasonably equivalent value" to TriEnda because the value of other investors' membership interests rose as Zamec's proportional stake in the firm was reduced. The problem, as Primex observes, is that this is value to investors and not to TriEnda. The firm disbursed $7 million and got nothing back. Both the legal and the economics professions regularly conclude that changing a firm's ownership structure is not a source of value to the firm itself. A payment to repurchase membership interests is in the nature of a dividend, which distributes profits to investors (and changes proportional ownership interests) but does not add to the firm's financial health.

We need not spell out the reasoning and authorities behind that conclusion, because it does not matter. Section 242.04(1)(b) requires the claimant to show two things: that the debtor did not receive reasonably equivalent value *and* that it "should have believed that [it] would incur debts beyond [its] ability to pay as they became due." The district judge found that TriEnda did not have, and should not reasonably have had, a belief that it would become unable to pay its debts as they came due. That finding is not clearly erroneous.

Primex observes that it had a contract requiring TriEnda to pay for its supplies within 30 days of delivery. But before the buyout TriEnda had averaged 62 days in paying Primex, which tolerated that schedule. Near the time of the buyout, TriEnda informed all of its creditors that it anticipated paying for supplies 75 days after delivery. Primex could have treated this as an anticipatory breach of contract and ceased deliveries until assured of a 30-day payment schedule. But it did not do so. It did not even protest. It went right on delivering and so accepted the 75-day term for future deliveries. Contracts can be modified by course of performance; this one was. TriEnda paid Primex approximately $9 million for supplies delivered *after* the 75-day notice was given. It was only the final deliveries, in the months immediately before TriEnda's collapse, that went unpaid. The district court did not make a clear error in ruling that TriEnda not only thought that it would pay debts as they came due but actually did so until close to the end of its business.

This is enough to show that the judgment must be affirmed. For the sake of completeness, we add that the district judge's third ruling (that the buyout did not cause Primex's loss) reflects neither a mistake of law nor a clearly erroneous finding of fact. The district court found that in December 2009, when it repurchased some of Zamec's investment, TriEnda was flourishing. Instead of digging into its working capital, it raised the $7 million by borrowing from Fifth Third Bank, which investigated TriEnda's business and concluded that the loan would be safe. The Bank also loaned TriEnda an extra $6 million to enhance its working capital. But in early 2010 TriEnda's principal customer (which the parties call SAS) began to curtail its orders. The customer initially said that the curtailment was temporary, but later it became clear that SAS was in trouble because its own principal customer (which the parties call iGPS) was in trouble. In December 2010 iGPS failed. It did not pay SAS, and SAS did not pay TriEnda. SAS then owed TriEnda $8.5 million, which is uncollectable. TriEnda tried to stay in business by selling to other customers, and it paid suppliers such as Primex as long as it could, but in February 2011 TriEnda ran out of money and closed.

The district court found that, if TriEnda had not bought out part of defendants' interest, it would have failed about the same time—maybe sooner, because without the Zamec buyout TriEnda would not have secured the extra working capital from Fifth Third Bank. There's no reason to think that TriEnda would have survived the demise of its principal customer. That business reversal, not the buyback, brought TriEnda down. If it had failed a little sooner, or a little later, it still would have owed Primex Plastics for the previous 75 days' worth of deliveries. That's why the district court concluded that

the buyback did not play a causal role on Primex Plastics' loss, and why we think the finding not clearly erroneous.

AFFIRMED